IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ALFONSO BLACK, #1100364 | § | |
| VS. | § | CIVIL ACTION NO. 6:08cv153 |
| JOHN M. COLUNGA, ET AL. | § | |

## MEMORANDUM OPINION AND
## ORDER OF DISMISSAL

Plaintiff Alfonso Black, an inmate previously confined at the Michael Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The Defendants remaining in the lawsuit are Officer John M. Colunga, Officer Daisy Morrison, Officer Kerry Yarbrough and Principal Jeffrey Flowers. The complaint was transferred to the undersigned pursuant to 28 U.S.C. § 636(c).

The present Memorandum Opinion concerns the Plaintiff's motion for summary judgment (docket entry numbers 57 and 66) and the Defendants' motion for summary judgment (docket entry numbers 64 and 67). The Defendants filed a response (docket entry #68) to the Plaintiff's motion for summary judgment, and the Plaintiff filed responses (docket entry numbers 71 and 72) to the Defendants' motion for summary judgment.

### Plaintiff's Allegations

The original complaint was filed on April 21, 2008. The Plaintiff complained that the Defendants failed to protect him from attacks by inmate McKinley Davis. On November 6, 2008, the Court conducted an evidentiary hearing, consistent with *Spears v. McCotter*, 766 F.2d 179 (5th Cir.

1

1985), to consider the Plaintiff's claims. Regional Grievance Coordinator Chip Satterwhite, Assistant Warden Eddie Baker and Nurse Thomas Maciel attended the hearing in order to answer any questions the Court may have concerning prison policy or information in the Plaintiff's records.

The first attack occurred at the Michael Unit on July 12, 2007. The Plaintiff and inmate Davis were cellmates. The Plaintiff stated that Davis repeatedly struck him with a hot-pot and radio and knocked out two of his teeth. The attack occurred in the presence of Colunga and Morrison, who did nothing. Prior to the assault, he informed the officers that Davis had struck him through the bars of the cell. He asked to speak to a supervisor, but they ignored his request. Fifteen minutes later, at rack time, Davis returned to the cell and attacked the Plaintiff. The Plaintiff testified that Morrison walked away laughing. The fight stopped when Sgt. Majette came on the scene and told Davis to stop fighting.

The Plaintiff was taken to the infirmary by Sgt. Majette. Davis was moved to another cell, but he did not receive a disciplinary case. Sgt. Majette told the Plaintiff that he was going to prepare a disciplinary case against Davis, but Lt. Brown overrode his decision and simply had Davis moved. The Plaintiff testified that Defendants Colunga and Morrison were warned that the attack would occur before it happened, but they failed to take steps to prevent it.

A second altercation occurred on November 16, 2007. The Plaintiff came into contact with Davis at school. The Plaintiff testified that he notified Yarbrough about his previous problems with Davis. Yarbrough told him to talk to Principal Flowers. He talked to Flowers and was told that this was a security concern. Yarbrough told the Plaintiff to return to class. Davis approached him in the classroom and attacked him. The teacher told them to break it up. Yarbrough came in and sprayed the Plaintiff with a chemical agent. The Plaintiff was confined in prehearing detention. The Unit Classification Committee recommended a transfer to another unit, and the State Classification Committee had him transferred to another unit.

Nurse Maciel testified under oath from the Plaintiff's medical records. The medical records revealed that the Plaintiff received first aid after the incident on July 12, 2007. There is nothing in the medical records about the incident that occurred on November 16, 2007.

Warden Eddie Baker testified under oath that the officers should have reported the Plaintiff's concerns to their supervisor. Depending upon the circumstances, fifteen minutes was enough time for a supervisor to respond.

<u>Plaintiff's Motion for Summary Judgment</u>

The Plaintiff filed a motion for summary judgment (docket entry #57) on June 25, 2009. He filed an amended motion for summary judgment (docket entry #66) on July 23, 2009. He intended the amended motion to take the place of the original motion because the original motion did not comply with procedures. The amended motion will take the place of the original motion for summary judgment.

The Plaintiff argued that he is entitled to summary judgment because both attacks occurred after he had warned the Defendants that he would be attacked by inmate Davis. Defendants Colunga and Morrison failed to take steps to protect him on July 12, 2007, and he was attacked. Defendants Yarbrough and Flowers failed to take steps to protect him on November 16, 2007, and he was attacked again. He specified that he was seeking compensatory damages and injunctive relief.

In support of the motion, the Plaintiff cited I-60 request forms, grievances records, medical reports, security tapes and photographs. He asserted that the Defendants have not disputed the facts nor offered documentation other than to deny his claims.

<u>Defendants' Motion for Summary Judgment</u>

The Defendants filed their motion for summary judgment (docket entry #64) on July 29, 2009. They submitted a supplemental motion for summary judgment (docket entry #67) on August 6, 2009.

In support of their motion, they attached relevant portions of the Plaintiff's grievance records, classification records, use of force records, an affidavit by Windham School District Teacher Richard Simmons and Administrative Directive AD-3.48 regarding the prevention of employee injuries due to offender aggression. The classification records included documents from offender protection investigations during the applicable time period. They argued that they are entitled to Eleventh Amendment immunity and qualified immunity.

With respect to the facts of the case, the Defendants initially focused on the incident that occurred on November 16, 2007. The Defendants argued that the Plaintiff failed to show that Flowers and Yarbrough were or should have been aware of a serious risk to his safety prior to the assault on November 16, 2007. The grievance investigation revealed that Yarbrough informed Principal Flowers that the Plaintiff wanted to see him because he did not want to go to school. Flowers met with the Plaintiff, who indicated that he did not want to go to school because there were people in the school he did not like. Flowers asked him to identify the people, but the Plaintiff remained silent and would not answer. Consequently, Flowers told the Plaintiff to return to class. The Defendants argued that the Plaintiff did not communicate that his life was in danger and he did not tell Flowers the name of the offender that posed a risk to his safety. They argued that Flowers could not have been aware that Davis posed a serious risk to the Plaintiff's safety.

The Defendants further argued that there was no serious risk to the Plaintiff's safety prior to the assault on November 16, 2007. An offender protection investigation was begun following the initial incident on July 12, 2007. During the investigation, the Plaintiff signed a waiver stating that "the situation has been resolved and I no longer require protection/transfer." He further told Sgt. Green that "because of the housing reassignment . . . the situation has removed him from further harm." At the end of the investigation, Sgt. Green was unable to substantiate the Plaintiff's allegations.

The Unit Classification Committee moved the Plaintiff to a different housing section. The Defendants argued that the results of the investigation and the Plaintiff's waiver would not have placed Defendants Flowers and Yarbrough on notice that there was a risk of serious harm from inmate Davis.

The Defendants also argued that there was no risk of serious harm to the Plaintiff on November 16, 2007. The disciplinary records reveal that the Plaintiff was disciplined for assaulting inmate Davis on November 16, 2007. He pled guilty to the charge of assaulting an offender without a weapon. Moreover, Yarbrough observed the Plaintiff striking Davis in the upper torso. Davis' statement corroborated the staff's account of the incident. Davis specified that he was seated in the classroom when the Plaintiff approached him and struck him in the face and on the neck. Mr. Simmons, the teacher in the classroom, attested that the Plaintiff started the fight by striking Davis. The Defendants asserted that the Plaintiff was the assailant on November 16, 2007, and that there was no serious risk of injury to him. They argued that they consequently did not fail to protect the Plaintiff.

The Defendants next presented their discussion of the facts regarding the incident that occurred on July 12, 2007. They noted that an offender protection investigation was begun following the incident. The Plaintiff asserted during the investigation that he informed Morrison and Sgt. Majette of the situation. He did not assert that he reported his situation to Colunga. The Plaintiff's Step 1 grievance specified that he informed Morrison about the earlier altercation with Davis during the 2200 hours count. He stated that he requested to see a supervisor. Morrison temporarily left the area. When she returned, she told him that Sgt. Majette was in the dorms. Morrison stated in response to the Plaintiff's grievances that she, along with Colunga, informed the deck boss as soon as the Plaintiff notified them about the problem. The Defendants argued that the Plaintiff's allegations, along with Morrison's response to the grievance, established that Morrison immediately notified the deck boss about the Plaintiff's complaint and that they did not ignore his problem.

5

With respect to the Plaintiff's claim that Morrison watched Davis attack him, Morrison's written statement denied witnessing the attack. More specifically, she stated that "I did not see [offender Black] get hit with a hot pot or radio." She added that even if she had seen Davis assault the Plaintiff, TDCJ policy provides that an officer must intervene in offender fights when sufficient staff is present to control all participants. She argued that it was not unreasonable for her, a female officer, to remain outside of the cell and not try to stop the fight by herself.

The Defendants argued that their actions were objectively reasonable and that they are entitled to summary judgment based on qualified immunity. Their arguments will be discussed more fully in the Discussion and Analysis section of this Memorandum Opinion.

<u>Defendants' Response to Plaintiff's Motion for Summary Judgment</u>

The Defendants filed a response to the Plaintiff's motion for summary judgment (docket entry #68) on August 10, 2009. After reviewing the facts, they noted that the Plaintiff's motion did not include a statement of issues that is required in order to obtain summary judgment. Rule CV-56, Local Rules for the Eastern District of Texas. They also argued that the Plaintiff has not shown that they were deliberately indifferent. They noted that the issue is not whether the Plaintiff was assaulted by another inmate, but whether they failed to protect him. They argued that the Plaintiff is not entitled to summary judgment because his motion does not address the dispositive issue of whether they failed to protect him.

<u>Plaintiff's Responses to Defendants' Motion for Summary Judgment</u>

The Plaintiff filed his initial response to the Defendants' motion for summary judgment (docket entry #71) on August 13, 2009. He filed a supplemental response (docket entry #72) on August 14, 2009. In his initial response, the Plaintiff asserted that he told both Colunga and Morrison about the first assault and asked to be moved. They did not move him, and he was assaulted by Davis. He

further asserted that he told Yarbrough and Flowers that he had a fight with his cellmate and that his cellmate was in the class. They did nothing for him, and Davis assaulted him. He again asked for compensatory damages and injunctive relief.

The Plaintiff argued that the Defendants are not entitled to Eleventh Amendment immunity since he is suing them for damages in both their official and individual capacities. He argued that the Defendants are not entitled to qualified immunity because he informed them about his life being in danger before each incident and they did not take any steps to protect him. He asserted that AD-04.69 requires officials to remove an inmate from a threat regardless of whether he identifies the source of the threat. He argued that the Defendants were obligated to remove him from the threat to his safety, and they failed to do so on both occasions. They disregarded policy, and he was attacked. He argued that the Defendants are not entitled to summary judgment based on qualified immunity.

The Plaintiff cited a number of records submitted by the Defendants that support his claim that the Defendants knew that his life was in danger. His Current Institutional Adjustment Record reveals that he filed an offender protection investigation request because of inmate Davis on August 1, 2007. The entry was there at the time he talked to Yarbrough and Flowers on November 16, 2007. He noted that inmate Davis' Current Institutional Record reveals that several offender protection investigation requests were filed against Davis. Indeed, Davis' record reveals that offender protection investigations were conducted on four occasions in 2003 and 2004. The first entry after 2004 was the one involving the Plaintiff concerning the incident that occurred on July 12, 2007. The Plaintiff argued that these records reveal that Davis had a very violent record.

The Plaintiff also cited the offender protection investigation documents that were compiled after Davis assaulted him on July 12, 2007. The forms reveal that the Plaintiff claimed that Davis had a problem with everyone. The record reveals that he asserted that Morrison and Colunga witnessed

the attack and that he had reported his situation to Morrison and Majette. He asked to have Davis locked up for assaulting him. The record shows that officials decided to give the Plaintiff a housing change. He subsequently told Sgt. Green that the housing reassignment removed him from further harm, but he still wanted to pursue his grievances for the officers' wrongdoing. He cited a grievance worksheet that noted that an offender life in danger investigation was begun on July 16, 2007.

In his supplemental response, the Plaintiff cited additional records that purportedly show that officers knew of prison policies and failed to follow them. A response to a Step 1 grievance by Warden Eddie Baker, dated January 25, 2008, indicated that Lt. Ridings investigated the Plaintiff's life endangerment claims on December 14, 2007. Lt. Ridings found that there was evidence supporting the Plaintiff's life endangerment claims, thus the Unit Classification Committee recommended a unit transfer. The Plaintiff noted that Lt. Ridings documented the Plaintiff's claims about Davis attacking him, which would have placed officers on notice about the problem.

## Discussion and Analysis

Summary judgment is proper when the pleadings and evidence on file show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party for summary judgment has the burden of proving the lack of a genuine issue as to all the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1221-23 (5th Cir. 1985).

In deciding a motion for summary judgment, the Court must make a threshold inquiry in determining whether there is a need for a trial. "In other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." 477 U.S. at 247-48. In making this threshold inquiry, the Court must consider that "[s]ummary judgment is proper when, viewed in the light most favorable to the non-moving party, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Smith v. Xerox Corp.,* 866 F.2d 135, 137 (5th Cir. 1989) (citations omitted); Fed. R. Civ. P. 56(c).

Once the movants make a showing that there is no genuine material fact issue to support the nonmovant's case, the nonmovant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988); *see also Celotex*, 477 U.S. at 324. Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the nonmovant must present evidence sufficient to support a resolution of the factual issues in his favor. *Anderson*, 477 U.S. at 257. Summary judgment is proper if the affidavits, depositions, answers, and admissions on file fail to establish the existence of an element essential to the plaintiff's case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23. The nonmovant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment. *See, e.g., Burleson v. Texas Dept. of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004); *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001)

The first issue for consideration is the Defendants' Eleventh Amendment immunity claim. The Eleventh Amendment provides that the State of Texas, as well as its agencies, are immune from liability. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). The Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983. *Aguilar v. Texas Dept. of Criminal Justice*, 160

F.3d 1052, 1054 (5th Cir. 1998). In *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." The Supreme Court upheld the dismissal of the Michigan Department of State Police and its Director sued in his official capacity. *Id.* The Fifth Circuit has accordingly "held that the Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). The Defendants correctly argued that they are entitled to summary judgment to the extent that the Plaintiff has sued them for damages for actions taken in their official capacity. He may, however, proceed against them for damages for actions taken in their individual capacities.

The Defendants further argued that the request for injunctive relief should be denied. They acknowledged that the Eleventh Amendment does not bar suit against state officials in their official capacity for prospective injunctive relief. *Ex parte Young*, 209 U.S. 123 (1908). On the other hand, the Prison Litigation Reform Act limits the availability of prospective relief, including injunctions. 18 U.S.C. § 3626(a)(1). In *Ruiz v. Estelle*, 178 F.3d 385, 387 (5th Cir. 1999), the Fifth Circuit noted the limitation provided by the statute as follows:

> The Act provides that a district court should not grant prospective relief - defined as "all relief other than compensatory money damages," 18 U.S.C. § 3626(g)(7) - in a prison litigation case "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A).

The Plaintiff's complaint concerns the Defendants failing to protect him from inmate Davis. Narrowly drawn injunctive relief under these circumstances would go no further than ordering the prison system to transfer the Plaintiff to a unit away from Davis. The prison system, however, has already transferred him. The Plaintiff's request for injunctive relief regarding his safety became moot upon his transfer. *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001); *Cooper v. Sheriff, Lubbock County, Tex.* 929

F.2d 1078, 1084 (5th Cir. 1991). The Defendants are entitled to summary judgment regarding the Plaintiff's request for injunctive relief.

The primary issue before the Court is the Plaintiff's failure to protect claim. The Defendants argued that they are entitled to summary judgment based on qualified immunity. The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established rights which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wilson v. Layne*, 526 U.S. 603, 614 (1999). The doctrine of qualified immunity shields government officials "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Fraire v. Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992), *citing Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

The Supreme Court mandated that courts must employ a two-step sequence in evaluating whether government officials are entitled to qualified immunity claims in *Saucier v. Katz*, 533 U.S. 194 (2001). First of all, courts are required to resolve a "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." *Id.* at 201. Second, if the plaintiff has satisfied the first step, courts are required to decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* With respect to the second step, the Fifth Circuit has held that "a state actor is entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *Id.*

The Supreme Court recently revisited *Saucier v. Katz* in *Pearson v. Callahan*, 129 S.Ct. 808 (2009). The Court held that "experience supports our present determination that a mandatory, two-step rule for resolving all qualified immunity claims should not be retained." *Id.* at 817. The Court went on to hold that "while the sequence set forth in [*Saucier*] is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818. The Supreme Court noted that the *Saucier* procedure sometimes unnecessarily "results in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case." *Id.* at 818. It was further noted that courts are free to follow the *Saucier* procedure, but the decision "simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." *Id.* at 821. The Fifth Circuit subsequently cited *Pearson v. Callahan* for the proposition that lower courts have the discretion to decide which of the two prongs should be addressed, but noted that the traditional *Saucier* formulation is often times appropriate. *Collier v. Montgomery*, 569 F.3d 214, 217-18 (5th Cir. 2009).

The Court is of the opinion that the traditional *Saucier* two-step analysis in appropriate in the present case. With respect to the first step in the qualified immunity analysis, the Plaintiff argued that the Defendants violated his clearly established constitutional rights by failing to protect him from attack. The Eighth Amendment affords prisoners protection against injury at the hands of other inmates. *Smith v. Wade*, 461 U.S. 30 (1983); *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Instead, the standard to employ is whether prison officials were "deliberately

indifferent" to the safety needs of an inmate. *Id.*; *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002).

"[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prison official may avoid liability if he "responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844. Courts must employ a subjective standard, as opposed to an objective standard, in determining whether a prison official acted with deliberate indifference. *Id.* at 842-43; *Gordon v. Pettiford*, 312 Fed. Appx. 595, 596 (5th Cir. 2009).

The Fifth Circuit issued several published opinions after *Farmer v. Brennan* was decided regarding claims by Texas prison inmates alleging that prison officials failed to protect them. The first case that will be discussed by the Court is *Neals v. Norwood*, 59 F.3d 530 (5th Cir. 1995). In that case, the plaintiff had been assaulted and threatened by prison gang members, who demanded payment and sexual favors from him. He brought the threats to the attention of two case managers, a guard and the UCC. The plaintiff refused to be returned to Eight Building, where the attacks occurred, thus he was placed in transit for six months before being transferred to another unit. After the attack, he identified the two inmates who had threatened him, and they were transferred out of Eight Building. The UCC convened four hearings between the time of the attack and the plaintiff's transfer to another unit. He was given the opportunity to name inmates or to give other evidence as to the danger he feared. In each case, the UCC denied his reclassification and transfer due to insufficient evidence to support the claim. The district court dismissed the lawsuit as frivolous. On appeal, the Fifth Circuit cited the standards set forth in *Farmer v. Brennan* and noted that a prison inmate does not have a protectable liberty or property interest in his classification and his disagreement with a classification decision is

insufficient to establish a constitutional violation. *Id.* at 533. The Fifth Circuit concluded that the plaintiff's claims did not rise to the level of a non-frivolous constitutional claim, and the decision by the district court dismissing the case as frivolous was affirmed.

The next published case was *Adames v. Perez*, 331 F.3d 508 (5th Cir. 2003). The case was tried before a jury, which found three prison officials liable for failing to protect the plaintiff. At the time of the attack, the plaintiff was confined in administrative segregation because of his membership in the STG Texas Syndicate. In order to increase his chances of making parole, he reported that some prison guards were smuggling drugs into the prison on behalf of the Texas Syndicate. A few weeks later, he was attacked by another member of the gang. On the day of the attack, the plaintiff was being escorted back from the shower to his cell while handcuffed. The attacker escaped from his cell and stabbed the plaintiff with a shank several times. During the investigation that followed, it was determined that the attack was the product of the plaintiff refusing to give a stamp to a respected leader of the Texas Syndicate. The leader labeled the plaintiff a snitch, and the attack occurred later. The jury found three supervisory officials liable, including a captain, the senior warden and an assistant warden. The Fifth Circuit found that there was no direct evidence that these three officials knew about events that placed the plaintiff in danger. The Court also found that there was no direct evidence that they were aware that some officers were not following safety regulations. The Court also found that the designation in the plaintiff's file that he was a potential victim would not have necessarily lead them to conclude that he was at a substantial risk of serious harm. *Id.* at 513. The Fifth Circuit held that the plaintiff failed to show that these defendants were deliberately indifferent. The judgment finding the three defendants liable was vacated.

The next case was *Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004). During an eighteen month period, prison officials failed to protect the plaintiff from prison gangs who repeatedly raped

him and bought and sold him as a sexual slave. The district court denied the defendants' motion for summary judgment. On an interlocutory appeal, the Fifth Circuit found that the majority of the claims should have been dismissed on summary judgment for failure to exhaust or because of the defense of qualified immunity. The Fifth Circuit noted that it could not second-guess the district court's findings regarding disputed issues of fact. *Id.* at 525. With respect to legal issues, the Fifth Circuit concluded that the prison director, senior warden and director of classification were not liable as supervisors for failing to intervene in response to every inmate letter they received, thus they were entitled to summary judgment based on qualified immunity. *Id.* at 526. The Fifth Circuit upheld the denial of summary judgment regarding unit classification committee members who failed to take reasonable measures to protect the plaintiff. *Id.* at 527. The Fifth Circuit specifically noted that telling the plaintiff to fight ran counter to *Farmer v. Brennan*'s directives. *Id.*

The next published case was *Longoria v. Texas*, 473 F.3d 586 (5th Cir. 2006). The opinion involved an interlocutory appeal after this Court issued a decision on a motion for summary judgment. The plaintiff was housed in administrative segregation as a member of the STG Texas Syndicate. He was attacked by two other members of the gang, Peralez and White, after he was removed from his cell for a routine lockdown interview. It was believed that he was attacked because he had become an informant regarding gang related activities. Peralez and White were in the shower when the plaintiff was removed from his cell. The plaintiff claimed that he told Officer Rogers, who removed him from his cell, that Peralez and White wanted to kill him. Rogers assured him that he would be protected. Rogers handcuffed the plaintiff and removed him from his cell. While the plaintiff and Rogers were walking down the corridor, Peralez and White emerged from the showers. Rogers initially tried to stand between the plaintiff and the two other inmates, but other guards pushed him out of the way. Peralez and White tackled the plaintiff and stabbed him in the chest and neck.

The Fifth Circuit initially noted that a district court must look at defendants' individual roles in the disputed incidents of a claim, as opposed to making blanket decisions for denying summary judgment. *Id.* at 593. The Fifth Circuit first reviewed the claims against Rogers and the two other guards. The Fifth Circuit found that the plaintiff had offered no evidence that they had conspired with the Texas Syndicate in planning the stabbing. *Id.* at 593. The Fifth Circuit also found that the three unarmed officers were not required to endanger their own safety in order to protect a prison inmate threatened with physical violence. *Id.* at 594. The Fifth Circuit found that the three officers were entitled to summary judgment based on qualified immunity because there was no evidence that the three officers were aware of the plaintiff's activities as an informant or that he had requested to be removed from lockdown or that he had made a life endangerment claim to another officer on the previous night. *Id.* The Fifth Circuit found that the evidence did not show that they had any knowledge of a substantial threat to the plaintiff's safety, even though the plaintiff had warned Rogers that the inmates in the shower wanted to kill him. *Id.*

The Fifth Circuit reviewed the claims against several officers in deciding that the plaintiff had not alleged facts showing that they acted unreasonably. In particular, it was noted that an officer referring a matter for further investigation or taking other appropriate administrative action fulfills an official's protective duties. *Id.* With respect to Major Hudson and Officer Johnson, the Fifth Circuit found that there were disputed issues of material fact as to the information known to them and whether he had knowledge that the plaintiff faced a substantial risk to his safety, thus the interlocutory appeal with respect to them was dismissed for lack of jurisdiction. *Id.* at 595.

Finally, one last recent Fifth Circuit decision involving the Eastern District of Texas should be reviewed, which is *Moore v. Lightfoot*, 286 Fed. Appx. 844 (5th Cir. 2008). The case once again involved an interlocutory appeal from the denial of a motion for summary judgment based on qualified

immunity. The plaintiff was assaulted by another inmate named Holiday. The Fifth Circuit discussed the claims against two defendants. With respect to SCC member J. P. Guyton, the Fifth Circuit held that the plaintiff had satisfied the first prong of the qualified immunity analysis since Guyton had the plaintiff returned to the general population even though he knew there was a threat to the plaintiff. With respect to the second prong, however, the Fifth Circuit found that Guyton's action were objectively reasonable because he took measures to remove the threat to the plaintiff by transferring the inmate who was threatening him to another unit  *Id.* at 848. The Fifth Circuit found that he was entitled to qualified immunity. With respect to UCC member Major Lightfoot, the Fifth Circuit found that the plaintiff satisfied the first prong in the summary judgment analysis by showing that Lightfoot twice voted to return the plaintiff to the general population despite knowing that the plaintiff faced a serious risk of harm there. *Id.* The Fifth Circuit went on to hold, however, that Lightfoot was entitled to summary judgment based on qualified immunity for acting reasonably. The Fifth Circuit provided the following explanation:

> Lightfoot, however, like Guyton, took some measures in response to Moore's complaints. On October 16, 2002, in response to Moore's first life endangerment claim, Lightfoot, as the UCC chairman, voted to place Moore in transient housing and recommended that Moore be transferred from Beto Unit. Although Lightfoot thereafter twice voted to return Moore to general population where inmate Holiday remained, Lightfoot did so only after the SCC first decided to transfer Tidwell, who was the supposed gang leader, and then after four other threatening inmates were transferred from the unit. Like Guyton, such a response may very well have been reasonable, and clearly established law did not indicate that it was objectively unreasonable.

*Id.* The Fifth Circuit thus held that both officials were entitled to summary judgment based on qualified immunity.

With the principles from these cases in mind, the Court will address the Defendants' motion for summary judgment with respect to their individual roles in this case. The first Defendant to consider is Officer Daisy Morrison. Viewing the competent summary judgment evidence in a light

most favorable to the Plaintiff, such evidence shows that inmate Davis struck the Plaintiff through the bars of the cell, that the Plaintiff notified Morrison about the assault and asked to be moved, but she failed to move him. Davis attacked the Plaintiff a few minutes later. The competent summary judgment evidence viewed in a light most favorable to the Plaintiff supports a conclusion that she knew there was a substantial risk of serious harm to the Plaintiff and failed to protect him. Such evidence supports a conclusion that Morrison's conduct violated his constitutional rights. The second step in the qualified immunity analysis, using the words of the Fifth Circuit, is whether Morrison's conduct was objectively reasonable in light of the rules that were clearly established at the time of her actions. The competent summary judgment evidence shows that Morrison left the area when the Plaintiff told her that he was at risk and that she notified the deck boss about the problem. The Plaintiff's Step 1 grievance acknowledged that she left the area and talked to Sgt. Majette. Sgt. Majette came to the area a few minutes later, albeit during the fight. Morrison's response was much like the response of Officer Glass in *Longoria,* who reported the plaintiff's concerns to an officer who had authorization to take action, which led the Fifth Circuit to find that the officer fulfilled her protective duties and, as such, her actions were objectively reasonable. 473 F.3d at 594. Similarly, her actions were similar to the actions of Lightfoot and Guyton in *Moore v. Lightfoot*, where the Fifth Circuit held that their actions were reasonable in taking some measures in response to the plaintiff's complaints. 286 Fed. Appx. at 848. Officer Morrison's response of reporting the Plaintiff's complaints to the deck boss and Sgt. Majette was reasonable and clearly established law did not indicate that it was objectively unreasonable, thus she is entitled to summary judgment based on qualified immunity. The same reasoning applies to Officer Colunga since the undisputed competent summary judgment evidence reveals that both Morrison and Colunga reported the Plaintiff's complaints to the deck boss. Both acted reasonably and are entitled to summary judgment based on qualified immunity.

The Plaintiff also complained that Morrison and Colunga did not intervene during the assault; instead, they just watched. In *Longoria*, the Fifth Circuit held that unarmed officers are not required to endanger their own safety in order to protect a prison inmate threatened with physical violence. 473 F.3d at 594. "The officers violated 'no clearly established' law by failing to intervene while unarmed." *Id.* Morrison and Colunga, like all TDCJ officers in housing areas, were unarmed. They are entitled to summary judgment based on qualified immunity.

The next issue is whether Yarbrough and Flowers are entitled to summary judgment. Once again, there are disputed issues of fact. Yarbrough and Flowers asserted that the Plaintiff never told them that his safety was at risk from Davis; instead, the Plaintiff told them that he did not want to go to school because there were people in the school that he did not like. The Plaintiff has a different story. Viewing the competent summary judgment evidence in a light most favorable to the Plaintiff, there is some question as to whether the Plaintiff ever identified Davis to Yarbrough and Flowers. In his response to the Defendants' motion for summary judgment, the Plaintiff asserted that he told them that he had a fight with his cellmate and that the cellmate was in the classroom, although he went on to respond to their assertion that he never identified Davis by arguing that they had a duty to remove him from the area even if he did not identify the person who posed a threat to him. The problem with the Plaintiff's claim against them is that he has not shown that they were aware of facts from which an inference could be drawn that they knew he faced a substantial risk of serious harm. The fact that he may have told them that he had problems with a former cellmate would not have necessarily lead them to a conclude that he was at risk of substantial harm at that time. The fact that information may have been in his file about his previous conflict with Davis would not have necessarily lead them to conclude that he was at a substantial risk of serious harm. *Adames v. Perez*, 331 F.3d at 513. Also, any failure on his part to avoid specifically naming Davis as the former cellmate who had attacked him

simply magnified the problem. The fact that there may have been a prison policy to remove an inmate from a threat regardless of whether he identified the source of the threat does not resolve the issue of whether they knew he faced a substantial threat of harm. Furthermore, the Defendants properly noted that the Plaintiff signed a waiver after the first incident and specified that the matter had been resolved by the housing change. The competent summary judgment evidence viewed in a light most favorable to Plaintiff does not show that Yarbrough and Flowers had actual knowledge that he faced a substantial risk of serious harm. In *Farmer v. Brennan*, the Supreme Court held that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." 511 U.S. at 837. The competent summary judgment evidence viewed in a light most favorable to the Plaintiff, at most, shows that Yarbrough and Flowers should have perceived a substantial risk of serious harm but did not. The Court finds, as a matter of law, that they were not deliberately indifferent.

An added factor concerns whether the Plaintiff was, in fact, facing a substantial risk of serious harm on November 16, 2007. The Defendants asserted that he was the actual assailant and that there was no risk of serious harm to him. The Court notes that the Plaintiff claimed that Davis assaulted him in the classroom, although his school teacher and Yarbrough stated that the Plaintiff attacked Davis. The Offense Report indicated that the Plaintiff assaulted inmate Davis by striking him in the upper torso. The Plaintiff did not deny the allegations at the disciplinary hearing. He was found guilty based on the Offense Report and his own admission of guilt.

In *Scott v. Harris*, 550 U.S. 372, 380 (2007), the Supreme Court noted that facts must be viewed in the light most favorable to the nonmoving party at the summary judgment stage "only if there is a 'genuine' dispute as to those facts." The Supreme Court added the following:

> When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* In the present case, the Plaintiff's assertion that Davis attacked him is blatantly contradicted by the record, including his own admissions during the prison disciplinary proceeding. No jury could believe from the record that Davis was the assailant on that occasion. The Plaintiff was not facing a substantial risk of serious harm on that occasion. Yarbrough and Flowers had no duty to protect the Plaintiff since he was not facing a substantial risk of harm on that occasion.

With respect to the incident on November 16, 2007, the Plaintiff has not satisfied the first step in the qualified immunity analysis. He did not show that Yarbrough and Flowers violated his constitutional rights. They persuasively argued that the Plaintiff's allegations against them constitute, at most, negligence on their part, which does not provide a basis for a potentially meritorious failure to protect claim. *Neals*, 59 F.3d at 533. *See also Farmer v. Brennan*, 511 U.S. at 835. Furthermore, the competent summary judgment evidence does not establish that the Defendants' act of telling him to go to the classroom was objectively unreasonable in light of the legal rules that were clearly established at the time considering the information known to them. Defendants Yarbrough and Flowers are entitled to summary judgment based on qualified immunity in light of both prongs of the summary judgment analysis. It is therefore

**ORDERED** that the Plaintiff's motion to amend motion for summary judgment (docket entry #65) is **GRANTED**. It is further

**ORDERED** that the Plaintiff's motion for summary judgment (docket entry #66) is **DENIED**. It is further

**ORDERED** that the Defendants' motion for summary judgment (docket entry numbers 64 and 67) is **GRANTED**. It is further

**ORDERED** that the complaint is **DISMISSED** with prejudice.  It is finally

**ORDERED** that all motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **28** day of **August, 2009.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE